# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| SAMUEL C. REYNOLDS, JR., <br><br> Plaintiff, <br><br> v. <br><br> CARRIE M. WARD, <br> BWW LAW GROUP, LLC, <br> DEUTSCHE BANK NATIONAL TRUST, *as Trustee for the Registered Holders of Long Beach Mortgage Loan Trust 2006-7*, <br> SELECT PORTFOLIO SERVICING, INC., <br> NETWORK FUNDING, LP, and <br> J.P. MORGAN CHASE COMPANY, <br><br> Defendants. | Civil Action No. TDC-18-3921 |

## MEMORANDUM OPINION

Samuel C. Reynolds, who is self-represented, has filed this civil action against the individuals and entities involved in originating, servicing, and foreclosing on the mortgage he executed to finance the purchase of his home in Greenbelt, Maryland. Reynolds alleges violations of certain provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e and 1692f (2012); the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641(g); the implementing regulations of the Real Estate Settlement Procedures Act ("RESPA"), 12 C.F.R. § 1024.41(b) (2018); and 10 state law claims. Pending before the Court are four Motions to Dismiss, with overlapping arguments, filed on behalf of all Defendants.. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motions will be granted.

## BACKGROUND

The following facts are presented in the light most favorable to Reynolds, the non-moving party. On June 16, 2006, Reynolds executed a note ("the Note") and security interest in the form of a Deed of Trust ("the Deed") (collectively, the "Mortgage Loan") to finance the purchase of his home located on Ridge Road in Greenbelt, Maryland. Reynolds alleges that the Mortgage Loan has been predatory from its inception and that Defendants have repeatedly misled him regarding the amounts of his payments, the validity of assignments of the Deed, and the roles of the various entities involved in servicing, holding, and investing in the Mortgage Loan. The Mortgage Loan originated with Network Funding, L.P. ("Network Funding"), was first assigned to Long Beach Mortgage Corporation, and was then assigned to Deutsche Bank, which currently holds the Note and the Deed. J.P. Morgan Chase Bank, N.A. ("Chase"), or one of its subsidiaries or predecessors in interest, was the prior servicer of the Mortgage Loan, and Select Portfolio Servicing, Inc. ("SPS") is the current servicer.

Reynolds received numerous Notices of Intent to Foreclose throughout the history of the Mortgage Loan, which caused constant stress for him as a homeowner. He generally alleges that the repayment plans he received from Chase and SPS all had high initial payments that forced him to sell cars at less than their retail value to avoid foreclosure. Specifically, in April 2010, Chase granted Reynolds a loan modification to cure a default, which Reynolds accepted under threat of foreclosure. In October 2012, Chase also gave Reynolds a repayment plan to cure his default. In February 2015, after SPS had taken over as servicer and threatened foreclosure, Reynolds and SPS executed a second loan modification to cure Reynolds's default.

In September 2016, after Reynolds's father passed away, he began to struggle financially due to the funeral expenses and had to rent out the first floor of his home. By August 2017,

Reynolds was behind on his payments again, and on August 30, 2017 Deutsche Bank and SPS appointed BWW Law Group, Carrie Ward, and several other individuals not named as defendants here as substitute trustees to begin foreclosure proceedings against Reynolds. Around that time, Reynolds was granted another repayment plan by SPS. Reynolds attempted to comply with the repayment plan in August and September 2017, but because he was unable to make a complete payment, SPS sent back his partial payment, stating that it was insufficient to prevent foreclosure.

In September 2017, after his partial payment had been returned, Reynolds submitted a complete loss mitigation application to SPS. SPS sent Reynolds a letter dated September 27, 2017 stating that, based on its review of his application, Reynolds did not qualify for any home retention loss mitigation options, but he qualified for a short sale or deed in lieu of foreclosure. Meanwhile, Reynolds requested a certified property securitization analysis report ("the Audit Report") of the entire Mortgage Loan from an independent, non-attorney auditor, which he received in October 2017. The Audit Report suggested that the two assignments of the Deed, first to Long Beach Mortgage Company and then to Deutsche Bank, were fraudulent or invalid based on the separation of the Deed from the Note, such that Deutsche Bank and its substitute trustees did not have standing to foreclose. These alleged fraudulent assignments are at the heart of Reynolds's Complaint: he asserts that at least Deutsche Bank, SPS, and BWW Law Group knew these assignments were fraudulent and that the trust is void but pursued foreclosure anyway, without standing to do so.

On July 13, 2018, BWW Law Group and Ward, among other appointed substitute trustees, filed an action for foreclosure against Reynolds in the Circuit Court for Prince George's County, Maryland. After the parties were unable to reach a resolution through foreclosure

mediation, on December 3, 2018, Reynolds filed a "Motion to Show Cause, Motion to Dismiss with Prejudice" pursuant to Maryland Rule 14-211(a) in the pending foreclosure action. In seeking dismissal of the foreclosure action, Reynolds's Motion made substantially the same argument raised in the instant Complaint, that the two assignments of the Deed were fraudulent or invalid, such that Deutsche Bank, SPS, and BWW Law Group do not have standing to foreclose. Two weeks later, on December 19, 2018, while Reynolds's motion to dismiss the foreclosure action was still pending, he filed this lawsuit. On February 26, 2019, the Circuit Court for Prince George's County issued an order denying Reynolds's motion to dismiss the foreclosure action, holding that his motion did not, on its face, state a valid defense to the validity of the lien or the lien instrument, or to the right to foreclose. In turn, Deutsche Bank and SPS supplemented their Motion to Dismiss pending in this Court to advise the Court of the denial of Reynolds's motion by the state court and its purported preclusive effects.

## DISCUSSION

Defendants seek dismissal of the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Although Defendants have filed four separate Motions to Dismiss, they treat the first-filed Motion by Deutsche Bank and SPS as the lead Motion, joining a variety of the arguments for dismissal asserted in that Motion, including that: (1) any effort to enjoin the state foreclosure action is barred by the Anti-Injunction Act, 28 U.S.C. § 2283 (2012); (2) the entire Complaint is barred by collateral estoppel based on the Circuit Court for Prince George's County's denial of Reynolds's motion to dismiss the foreclosure action; (3) Reynolds fails to plausibly allege a violation of the FDCPA; (4) Reynolds's TILA claim is inapplicable and untimely; and (5) Reynolds fails to plausibly allege a violation of RESPA. Upon review of these arguments, the Court finds that all of Reynolds's federal claims must be

4

dismissed. Because the Court lacks an independent source of subject matter jurisdiction over Reynolds's state law claims, the Court declines to exercise supplemental jurisdiction over them and will dismiss them without prejudice. Accordingly, the Court need not reach Defendants' remaining arguments that Reynolds's state law claims should be dismissed on the merits.

I.  **Legal Standard**

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). Documents attached to the complaint or motion may be considered if "they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). The court may also take judicial notice of matters of public record. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). When considering a Rule 12(b)(6) motion based on *res judicata* or *collateral estoppel*, the courts may "take judicial notice of facts from a prior judicial proceeding" when the assertion of preclusion as a defense "raises no disputed issue of fact." *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000). Accordingly, in resolving the Motions, the Court will consider the record of the foreclosure

action, of which it takes judicial notice. The Court will not consider any of the other documents attached to the Motions, unless they were also attached to the Complaint.

## II. Anti-Injunction Act

Defendants first argue that the entire Complaint must be dismissed pursuant to the Anti-Injunction Act ("AIA") as an impermissible collateral attack on the foreclosure action pending in the Circuit Court for Prince George's County. Under the AIA, a federal district court may not grant "an injunction to stay the proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. This bar extends to injunctions to prevent enforcement of state court orders relating to the right to possess real property. *See Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 641 (D. Md. 2015); *Williams v. Cohn*, No. PX-16-2886, 2016 WL 4415058, at *2 (D. Md. Aug. 19, 2016). It also applies to requests for declaratory relief, including where "a plaintiff requests a declaration that the [plaintiff's] mortgage and note are unenforceable." *Williams*, 2016 WL 4415058, at *2 (alteration in original).

To the extent Reynolds requests that this Court enjoin the state court foreclosure proceedings or provide a judicial determination of the rights, obligations, and interests of the parties with respect to the subject property, such relief is barred by the AIA and will be denied. However, Reynolds's Complaint also seeks damages based on violations of federal and state law, so the Court will not simply dismiss the entire case on the basis of the AIA.

## III. Collateral Estoppel

Defendants also argue in a supplement to their Motions to Dismiss that all of Reynolds's claims related to the standing of Defendants to foreclose or the validity of the lien are barred by the doctrine of collateral estoppel based on the state court's denial of Reynolds's motion to dismiss the foreclosure action. Collateral estoppel, or issue preclusion, applies when a party

raises in a successive lawsuit "an issue of fact or law actually litigated and resolved in a valid court determination essential to [a] prior judgment" and that party had "a full and fair opportunity to litigate," even if the issue "recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). The "preclusive effect of a judgment rendered in state court is determined by the law of the state in which the judgment was rendered." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008). Under Maryland law, collateral estoppel applies where (1) the issue to be precluded is identical to one previously decided; (2) there was a final judgment on the merits; (3) the party against whom estoppel is to be applied was a party or in privity with a party in the prior adjudication; and (4) the party against whom estoppel is to be applied was given a fair opportunity to be heard on the issue. *Leeds Fed. Sav. & Loan Ass'n v. Metcalf*, 630 A.2d 245, 250 (Md. 2007).

In this case, the Court's inquiry begins and ends with the requirement of a final judgment on the merits. Although the state court arguably reached the merits of Reynolds's motion to dismiss by stating that his motion did not, on its face, state a valid defense to the validity of the lien or lien instrument, the denial of a motion to dismiss is not a final judgment under Maryland law. *See Planning Bd. of Howard Cty. v. Mortimer*, 530 A.2d 1237, 1244 (Md. 1987). Rather, in the context of foreclosure proceedings, ratification of the foreclosure sale is the final judgment for purposes of *res judicata* or collateral estoppel. *See Jones v. Rosenberg*, 940 A.2d 1109, 1119 (Md. Ct. Spec. App. 2008). The Maryland Court of Appeals has specifically noted that a motion to dismiss or stay a foreclosure proceeding pursuant to Maryland Rule 14-211 is appealable only as an interlocutory order under Md. Code Ann., Cts. & Jud. Proc. § 12-303 (West 2011), not as a final order. *See Fishman v. Murphy ex rel. Estate of Urban*, 72 A.3d 185, 188 n.2 (Md. 2013). Accordingly, where the foreclosure sale has not yet taken place, nor has it been ratified, there is

no final judgment entitled to a preclusive effect. Thus, the Court does not need to reach the other requirements for collateral estoppel to find that Reynolds's claims are not barred here.

## IV. FDCPA

In Count Three of the Complaint, Reynolds alleges that the Defendants committed multiple violations of the FDCPA, including violations of 15 U.S.C. §§ 1692e(2)(A), 1692e(10), and 1692(f)(1). To state a claim under the FDCPA, Reynolds must allege that (1) he has been the object of collection activity arising from consumer debt; (2) Defendants are debt collectors as defined by the FDCPA; and (3) Defendants have engaged in an act or omission prohibited by the FDCPA. *Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 524 (D. Md. 2013) (citations omitted); *see also Levins v. Healthcare Revenue Recovery Grp. LLC*, 902 F.3d 274, 280 (3d Cir. 2018). Defendants do not specifically dispute the first two elements but instead argue that "[t]he Complaint does not provide any detail regarding the factual basis for the claim," and, to the extent the claim relies on the assertion that there is no Mortgage Loan or that the debt is invalid, it is facially implausible. Mot. Dismiss at 12, ECF No. 21-1.

Reynolds's theory of liability under the FDCPA is premised on his claim that two assignments of the Deed were fraudulent, such that the Mortgage Loan is invalid and Defendants do not have the right to foreclose on his home. He asserts a violation of 15 U.S.C. § 1692e(2), which prohibits the false representation of the "character, amount, or legal status of any debt" or "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." Although Reynolds does not specifically link the statutory language with any specific facts in the Complaint, under a liberal reading of the Complaint, Reynolds is arguing that the debt was falsely represented by Defendants because the debt itself was invalid based on the fraudulent assignments. The same premise underlies Reynolds's allegations under

§1692e(10), which prohibits the "use of false representations or deceptive means to collect or attempt to collect any debt," as well as the alleged violation of § 1692f(1), which prohibits "the collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." In short, Reynolds's FDCPA claims depend on the plausibility of his assertion that the debt is invalid, such that Defendants are not legally authorized to collect the debt through the foreclosure process. *See Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135 (2d Cir. 2017) (noting that sections 1692e and 1692f of the FDCPA bar collection of an invalid debt as an unfair debt collection practice); *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 535 (6th Cir. 2014) (holding that maintaining an invalid lien is "unfair" under § 1692f).

Reynolds's allegation that the two assignments of the Deed were fraudulent or invalid is based on the findings of the Audit Report. As for the first assignment of the Deed to Long Beach Mortgage Company, the Audit Report states that it was invalid because at the time that the assignment of the Deed to Long Beach Mortgage Company was recorded in 2014, "[a]pproximately eight (8) years had gone by since [the] note was placed into LONG BEACH MORTGAGE LOAN TRUST 2006-7," and by then the Long Beach Mortgage Loan Trust ("the Trust"), was then a defunct entity. Compl. Ex. 9 at 18, ECF No. 1-14. Similarly, the Audit Report states that the second assignment of the Deed to Deutsche Bank was invalid because at the time that the assignment was recorded in 2017, "[a]pproximately eleven (11) years had gone by since [the] note was placed in LONG BEACH MORTGAGE LOAN TRUST 2006-7," and the Trust was by then defunct. *Id.* Reynolds reiterates these findings in his Complaint and asserts that the assignments were void because they were recorded after the closing date of the

Trust, even though the Note was transferred prior to the closing date. Thus, the Deed and Note were separated, rendering his Mortgage invalid.

In Maryland, however, the right to enforce the deed of trust automatically follows the note, making the two inseparable. *Deutsche Bank Nat. Trust Co. v. Brock*, 430 Md. 714, 63 A.3d 40, 48 (Md. 2013) ("[O]nce the [promissory] note is transferred, the right to enforce the deed of trust follows." (internal citation omitted)). Courts in this district have therefore repeatedly and appropriately rejected the "separation theory" as a basis for invalidating mortgages. *See McNeil v. Bank of Amer.*, No. DKC–13–2162, 2014 WL 1831115, at *3 (D. Md. May 7, 2014) ("[C]ourts in this district have rejected this 'separation theory.'"); *Reed v. PNC Mortg.*, No. AW–13–1536, 2013 WL 3364372, at *3 (D. Md. July 2, 2013) ("Courts in this district have rejected similar claims based on the alleged separation of a note from the deed of trust."); *Parker v. Deutsche Bank Nat'l Trust Co.*, No. WMN–12–3358, 2013 WL 1390004, at *3 (D. Md. Apr.3, 2013) (rejecting the separation theory because the "rights under the Deed of Trust follow the Note"). This holds true even where, as here, the assignment of a deed of trust is executed and recorded after the securitization pool has already closed. *See Svrcek v. Rosenberg*, 40 A.3d 494, 501, 507-508 (Md. Ct. Spec. App. 2012) (finding that an assignment of a deed of trust executed and recorded in 2009 was "of no consequence with respect to . . . [the] right to initiate the foreclosure proceeding," because the note was transferred into the securitization pool in 2006, and "once the note was transferred, the right to enforce the deed of trust followed"). Accordingly, where Reynolds's theory of the fraudulent transfer underlying his FDCPA claim is invalid as a matter of law, the Court finds that Reynolds has failed to state a claim for violation of the FDCPA.

## V. TILA

Reynolds also alleges that Defendants violated 15 U.S.C. § 1641(g), a provision of TILA which requires that, "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer," as well as provide certain information to the borrower about the new creditor, including the new creditor's contact information, how to reach the new creditor or agent with authority to act on behalf of the new creditor, and the location of the place where transfer of ownership of the debt is recorded. *Id.* Although Reynolds does not specify which actions of Defendants allegedly violated this provision of TILA, he states that they violated this provision by "refusing to disclose the purported assignments/transfer of the" Note and Deed. Claim for Relief ¶ 121, ECF No. 1-3. Thus, the only plausible action fitting within the purview of 15 U.S.C. § 1641(g) is the assignment of the Mortgage Loan to Deutsche Bank, which was executed on July 31, 2006.

However, 15 U.S.C. § 1641(g) did not go into effect until May 20, 2009, so Deutsche Bank was under no obligation to comply with the notice provision in 2006. *See* Helping Families Save Their Homes Act of 2009, Pub. L. No. 111-22 § 404, 123 Stat. 1632, 1658 (May 20, 2009) (amending TILA § 131, 15 U.S.C. § 1641); Truth in Lending, 74 Fed. Reg. 60143-01, 60143 (Nov. 20, 2009); *see also Humphreys v. Bank of Am.*, 557 F. App'x 416, 424 (6th Cir. 2014) (holding that a transferee was not liable for violating § 1641(g) when the plaintiff had not introduced any evidence demonstrating acquisition of the loan after the May 2009 effective date); *Bradford v. HSBC Mortg. Corp.*, 829 F. Supp. 2d 340, 353 (E.D. Va. 2011) (stating that "[n]othing in TILA indicates that [§ 1641(g)] should be applied retroactively, and retroactive

application of the provision . . . would undoubtedly and impermissibly 'attach new legal consequences to events completed before its enactment'").

Even if 15 U.S.C. § 1641(g) were applicable, Reynolds's claim would be barred by TILA's one-year statute of limitations, which provides that "any action under this section may be brought in any United States District Court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Any violation of the disclosure requirements under 15 U.S.C. § 1641(g) would have occurred 30 days after the Deed was assigned to Deutsche Back, or on August 30, 2006, meaning the statute of limitations expired on August 30, 2007, more than 10 years before Reynolds filed this lawsuit.

## VI. RESPA

Congress enacted RESPA to protect consumers from "unnecessarily high settlement charges caused by certain abusive practices" in the real estate mortgage industry, and to ensure "that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process." 12 U.S.C. § 2601(a). RESPA's implementing regulations, which are codified at 12 C.F.R. §§ 1024.1 to 1024.41 and known as "Regulation X," *see* 12 C.F.R. § 1024.1, prescribe additional duties and responsibilities of mortgage servicers under RESPA. Under a provision of Regulation X entitled "Loss mitigation procedures," servicers of federally related mortgages must take certain steps when a borrower applies for loss mitigation measures. *See* 12 C.F.R. § 1024.41. Specifically, under 12 C.F.R. § 1024.41(b), if a servicer receives a loss mitigation application at least 45 days before a foreclosure sale, the servicer is required to promptly review the application, notify the borrower in writing of receipt of the application within five days, and inform the borrower whether the application is complete or incomplete. *Id.* § 1024.41(b)(2)(i). If the application is deemed incomplete, the servicer must

provide a reasonable date by which the borrower should submit specific documents and information necessary to make the application complete. *Id.* § 1024.41(b)(2)(i)(B), (b)(2)(ii).

Reynolds alleges that Defendants failed both to provide notice of receipt of his loss mitigation application within five days and to provide a reasonable date by which he could submit any missing information from his application. Reynolds does not, however, specify to which of his loss mitigation applications these allegations apply. The Court, liberally construing Reynolds's Complaint, infers that Reynolds is referring to his most recent loss mitigation application referenced in the Complaint, which was submitted some time in September 2017 and would fall within Regulation X's three-year statute of limitations. *See* 12 U.S.C. §§ 2605, 2614; *Dail v. Bank of Am., N.A.*, No. 2:18-CV-640, 2019 WL 921452, at *5 (E.D. Va. Feb. 21, 2019) (holding that "Regulation X has a three-year statute of limitations"). Defendants argue that Reynolds's failure to tie his allegations to a specific loss mitigation application is grounds for dismissal of Reynolds's RESPA claim for failure to comply with the rules of pleading set forth in Federal Rule of Civil Procedure 8, and for failure to state a claim under Rule 12(b)(6). While that may be so, the Court would consider granting Reynolds leave to amend his RESPA allegations under Federal Rule of Civil Procedure 15(a) if such amendment were not futile. *See HCMF Corp. v. Allen*, 238 F.3d 273, 276-77 (4th Cir. 2001). However, upon further review of Reynolds's Regulation X claim, the Court finds that any amendment would be futile because Reynolds has not alleged, and cannot allege, any damages stemming from the asserted violation, as required to state a claim for a violation of RESPA. Further, SPS was not required to comply with Regulation X in September 2017 because Reynolds had already submitted a complete loss mitigation application after the effective date of the regulation.

13

### A. Damages

A servicer that fails to comply with Regulation X is liable for actual damages and, upon a finding of a "pattern or practice" of noncompliance by the servicer, up to $2,000 in statutory damages. 12 U.S.C. § 2605(f). Reynolds has not alleged a "pattern or practice" of noncompliance, so to state a claim for violation of 12 C.F.R. § 1024.41(b), he must "plead 'actual damages,' that is—pecuniary or economic damages that flow directly from [the alleged violation]." *Aghazu v. Severn Sav. Bank*, No. PJM 15-1529, 2016 WL 808823, at *10 (D. Md. Mar. 2, 2016) (collecting cases). Courts have consistently held that conclusory allegations are insufficient to establish actual damages under RESPA, particularly where the pleadings fail to specify how the alleged damages were caused by the specific RESPA violation asserted. *See, e.g., Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 266 (D. Md. 2015) (collecting cases).

Here, Reynolds asserted damages arising from his need to sell cars at less than their retail value to meet the high initial payments on repayment plans, but those plans were issued in 2012, long before the alleged RESPA violation in 2017. Such damages pre-dating the violation are insufficient to state a claim. *See Linderman v. U.S. Bank Nat'l Ass'n*, 887 F.3d 319, 321 (7th Cir. 2018) (holding that damages predating the RESPA violation were insufficient); *Okoro v. Wells Fargo Bank, N.A.*, No. 16-0616, 2016 WL 5870031, at *11 (D. Md. Oct. 6, 2016) (same). Reynolds also generally alleges emotional damages and high blood pressure relating to the actions of Defendants, *see Houston v. U.S. Bank Home Mortg. Wis. Servicing*, 505 F. App'x 543, 548 n.6 (6th Cir. 2012), but he fails to state anywhere in the Complaint how his distress was caused by the failure of SPS to provide notice of receipt of his September 2017 loss mitigation application within five days or to provide the required instructions for completing his

application. Nor could he, because SPS's September 27, 2017 loss mitigation program decision letter states that it reviewed Reynolds's "complete Assistance Review Application," such that the Court must conclude that regardless of the timing or delivery of the required notice under 12 C.F.R. § 1024.41(b), Reynolds, in fact, submitted a complete loss mitigation application which SPS reviewed on its merits in a timely manner. Compl. Ex. 8 at 2-3, ECF No. 1-12. Thus, any emotional distress or other damages relating to the 2017 loss mitigation decision would have flowed from the loss mitigation decision itself, not from any non-compliance with 12 C.F.R. § 1024.41(b). Where Reynolds has failed to cite any cognizable damages for the alleged RESPA violation, his RESPA claim must be dismissed.

**B.     First Application**

Even if Reynolds had sufficiently alleged damages under RESPA, his RESPA claim would also fail because Regulation X requires a servicer to comply with the notice provisions of 12 C.F.R. § 1024.41(b) for a single loss mitigation application, and Reynolds has not alleged that Defendants failed to comply with section 1024.41(b) after the receipt of his previous loss mitigation applications. *See* 12 C.F.R. § 1024.41(i). Specifically, the regulation states: "A servicer must comply with the requirements of this section for a borrower's loss mitigation application, unless the servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete application." *Id.* Here, where SPS granted Reynolds a loan modification under threat of foreclosure in February 2015, after Regulation X went into effect in January 2015, any amendment to the Complaint would be futile because SPS apparently had satisfied this requirement of Regulation X for a loss mitigation application by the time of Reynolds' 2017 loss mitigation application. The final clause of 12

C.F.R. § 1024.41(i), which requires a loan servicer to comply with Regulation X for subsequent loss mitigation applications if a borrower has not been "delinquent at all times since submitting the prior complete application," did not go into effect until October 19, 2017, after the alleged September 2017 RESPA violation, and thus does not apply here. *See* Amendments to the 2013 Mortgage Rules Under the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z), 81 Fed. Reg. 72160-01, 72369 (Oct. 19, 2016); *Searcy v. CitiMortgage, Inc.*, 733 F. App'x 735, 738-39 (5th Cir. 2018) (holding that Regulation X's provisions do not apply retroactively); *Phillips v. Wells Fargo Bank, N.A.*, No. 3:17-CV-00519-JAG, 2018 WL 659199, at *2 n.3 (E.D. Va. Feb. 1, 2018) (noting specifically that the final clause of 12 C.F.R. § 1024.41(i) does not apply retroactively). On these facts, even construing the Complaint in the light most favorable to Reynolds, the Court finds that any Reynolds has failed to state a valid RESPA claim and that any amendment of the claim would be futile.

## VII. Supplemental Jurisdiction

A federal court may decline to exercise supplemental jurisdiction over state law claims where it lacks an independent source of subject matter jurisdiction over them and has dismissed all the plaintiff's federal claims. 28 U.S.C. § 1367(c)(3) (2012). Such discretionary dismissal is typical, *see Artis v. District of Columbia*, 138 S. Ct. 594, 597-98 (2018), and appropriate where the case is in its early stages and factors such as convenience and fairness to the parties warrant the court's declination of supplemental jurisdiction. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, (1988); *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).

The face of the Complaint and case law in this District reveal that this Court lacks diversity jurisdiction over Reynolds's state law claims because Reynolds is a citizen of Maryland and at least BWW Law Group is also a citizen of Maryland for purposes of diversity jurisdiction.

*Cf. Talley v. Ocwen Loan Servicing, LLC*, No. TJS-18-0052, 2018 WL 2717849, at *3 (D. Md. June 6, 2018) (holding that BWW Law Group is a citizen of Maryland for purposes of diversity jurisdiction), *appeal dismissed*, 744 F. App'x 162 (4th Cir. 2018). Thus, where there is already a pending state court action where Reynolds may be able to assert his state law claims and this case has not yet proceeded to discovery, the Court declines to exercise supplemental jurisdiction over the state law claims. The remaining claims will be dismissed without prejudice so that Reynolds may refile them in state court or they can be litigated, if appropriate, in the foreclosure proceeding in the Circuit Court for Prince George's County.

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss, are GRANTED. Reynolds's FDCPA, TILA, and RESPA claims will be dismissed with prejudice, and his state law claims will be dismissed without prejudice. A separate Order shall issue.

Date: August 12, 2019

THEODORE D. CHUANG
United States District Judge